31 C.C.P.A.(Patents)

## In re LANGEL.

### Patent Appeal No. 4856.

Court of Customs and Patent Appeals.
March 6, 1944.

Zabel, Carlson, Gritzbaugh & Wells, of Chicago (W. Bayard Jones, of Chicago, of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

BLAND, Associate Judge.

From the decision of the Board of Appeals of the United States Patent Office, affirming the decision of the Primary Examiner rejecting claim 9, the only claim in appellant's application for a patent relating to stippled sheet metal, the applicant has appealed here.

The invention disclosed in appellant's application and defined in claim 9 is for a method of producing a novel type of stippled sheet metal, used for the most part in the production of baking pans. The stippled effect is produced by irregular depressions and corresponding raised portions, which, it is said, permits grease used in the baking art to remain in the depressions even though the pan is not sitting on a level surface. Appellant states that the stippled effect prevents the baked material from sticking to the pan, and that the grease will not flow from one depressed area to another but that the hot cooking gases will circulate through intermediate crevices all along the bottom of the baked material. The pan is said to have the appearance of a hand hammered article without any plane surfaces.

The sheet of metal is passed between rollers where small regular depressions and corresponding projections are made in rows about ¼ inch apart on each face of the sheet. Concerning the rollers, appellant's application contains the following statement (reference numerals omitted):

" * * * a pair of rollers are rotatably mounted in position by means of shafts, or in any other suitable manner, whereby the rollers cooperate with each other for a

pressing operation as hereinafter described. * * * the face of each of the rollers is provided with a series of outwardly projecting pins or lugs which are provided in substantially radial position at the entire face of each of the rollers.

"With the toothed rollers mounted in cooperative relation, a plain piece of sheet metal is passed between the rollers so as to cause the teeth or lugs to form aligned depressions scattered over the whole face of the sheet, the teeth or pins of one roller being held in staggered position circumferentially with respect to the teeth of the other roller for securing the desired result. * * *"

Appellant passes the sheet through the rollers repeatedly at different angles. Preferably, the sheet is passed between the rollers from six to ten times. This has the effect of changing the regular appearance of the depressions and raised portions which the sheet had when passed through the rollers the first time, giving the same a mottled or stippled effect on both sides of the sheet. The depressions and raised portions, after the sheet has been passed through the rollers at different angles, are so deformed as to leave but slight regularity in their appearance.

Claim 9 reads as follows:

"9. The method of producing a stippled effect in a sheet of metal, which comprises feeding the sheet edgewise in a selected angular position between cooperating pressure devices for producing a series of projections aligned with each other on each face of the sheet and separated from each other by intervening depressions aligned in the same direction, and then feeding the sheet between said pressure devices a plurality of times additionally with the sheet at each successive treatment advanced at a different angle as compared with previous treatments whereby successive treatments of the sheet by largely breaking down and deforming previously formed rows of projections eliminate almost completely any regularity in the arrangement of said projections."

The Patent Office tribunals, in rejecting appellant's claim, relied upon two patents:

Jackes, 2,075,286, March 30, 1937.

Ellis, 1,995,057, March 19, 1935.

The examiner rejected appellant's said claim as lacking invention over the patent to Jackes and the patent to Ellis.

Jackes' patent discloses a sheet metal and a method of making the same with more or less irregular indentations of crater-like form. The metal is passed between two pressure elements, the upper one being vertically movable. In the lower element are depressions into which are placed round balls at irregular intervals. The depressions are larger than the balls, permitting the balls to shift. The stamping process which makes the cup-like indentations is repeated in such manner that portions of the already formed depressions are broken down, leaving very little if any regularity in the alignment of the depressions. The sheet so stamped then runs through smooth rollers which have the tendency of mashing the bottoms of the craters. The tops of the craters are all on the same elevation. Jackes suggests that his product might be used in "hot locations such as in stove pipe, stoves, etc." His purpose is to ornament and improve the appearance of the metal by giving it the "appearance of having a crinkled coated finish." The patent contains no method claims.

Ellis was cited for the purpose of showing the making of regular rows of small indentations and corresponding elevations in articles being passed between rollers. The Ellis patent relates to making indented paper sheets. Slightly moist paper with long fibers is run between two rolls, on each of which pins are circumferentially placed in rows. The pins on one roll are offset from the pins on the adjacent roll, the pins meshing "in such a way that a pin on each roll projects between two pins on the other roll in a line which is axial of both rolls, and a similar intermeshing of pins taken radially of both rolls." The paper is passed between the rolls but once.

The examiner stated in substance that since Jackes "discloses the concept * * * of *producing irregularity by impressing one pattern on a previously formed different pattern*" [italics quoted] and since Ellis shows it to be old to "indent sheets with regularity," appellant's claim calls for nothing inventive over the prior art cited.

The Board of Appeals agreed with this view and, after calling attention to the examiner's holding and referring to the disclosure of the Ellis patent, had the following to say:

"The Jackes patent discloses a process using feed rolls in which the effect of the treatment is said to be to provide a sheet having more or less irregular indentations

of crater-like form. The irregularity of the indentations of the Jackes patent is produced in a manner such that after advance of the strip, the block again descends and the material is provided with a second set of impressions. The advance of the strip is not equal to the width across the blocks but is only a small fraction thereof and the balls are thus pressed a second time into and partially adjacent to an already indented area producing various shapes of indentations. It is not stated that these successive operations of the patent are performed on a sheet that is presented at a different angle in the succeeding steps, but since the result produced appears to be irregularly arranged indentations, it is considered that the method is unpatentable over the reference to Jackes." [Reference numerals omitted.]

Upon petition for reconsideration, the board said that the applicant had argued that he omitted a step thought necessary in the Jackes patent. In disagreeing with the applicant on this phase of the case and in approving the holding of the examiner, the board concluded its last decision as follows:

"It is not apparent that applicant omitted any step of Jackes in his process. Applicant also requires the shifting of the pattern to be impressed by successive reimpressions. Applicant's only difference is in shifting the sheet so that is [sic] will be aligned angularly with respect to the first or previous pass through the dies and it has been and is our view that to merely modify this shifting of the pattern to produce irregularity by changing the angular direction in subsequent passes is not a patentable change in the step but merely an obvious change with obvious results. The step of shifting the pattern is still performed by applicant.

"For the reasons given in our decision and herein, the rejection is affirmed."

We are not in agreement with the holding of the board. It seems to be predicated, for the most part, upon the fact that "since the result produced appears to be irregularly arranged indentations, it is considered that the method is unpatentable over the reference to Jackes." It is true that Jackes' finished product shows irregular depressions, which have been changed in form by the process above stated. However, the product of Jackes is wholly different from that of appellant. In looking at appellant's sheet, it is observed that there are high spots, low spots, and curved surfaces, all of which contribute to the changed appearance as the light is reflected from the highly irregular contour at different angles.

The mere fact alone that the products may differ in their appearance or characteristics is not conclusive that the processes are different, but it is an important consideration in ascertaining the differences between the processes. Neither of the cited patents shows a process of deforming elevations and depressions on both sides of a sheet of material which is passed between toothed rollers. By shifting the sheet a number of times so that it will pass through the rollers at an angle different from that previously employed in passing the same through the rollers, an unexpected appearance is produced by the process of deformation, and we think a wholly different product results. The surface of Jackes' product on one side lies in one plane, which is formed by the tops of the craters being substantially unchanged, and the appearance on the opposite side of the sheet must obviously be ratically different from the top side. Appellant has argued, we think properly, that his product, by virtue of being passed through the rollers several times in the said angular relation, has what he refers to as a "three-dimensional" characteristic, whereas the product of Jackes has a "two-dimensional" characteristic, resulting in the formation of craters, where the grease, if used in the baking art, would remain stationary but there would be no circulation of hot gases along the bottom of the baked material. This difference between the products, in our view, is an aid in understanding the difference between the two processes.

We think it involved an inventive concept to conceive the notion that regularly formed depressions and elevations on both sides of a sheet of metal could, by passing the sheet through the rollers several times at different angles, be so deformed as to produce a stippled or mottled effect practically devoid of any regularity or alignment of the elevations and depressions. It seems to us that appellant's method of making his product is new and useful, and that what appellant has done was not that which the board characterized as "obvious." We think that the step of shifting the angle of feed in passing the sheet through the rollers was an important step in the process, that it was unobvious,

and that its application in the manner stated brought about an unexpected and useful result.

The decision of the Board of Appeals is reversed.

Reversed.